## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **MELISSA DIEHL** | : | |
| 7726 Blacklick Eastern Rd. | : | |
| Pickerington, OH 43147 | : | |
| | : | |
| Plaintiff, | : | Case No. 2:24-cv-4220 |
| | : | |
| v. | : | JUDGE |
| | : | |
| **MATHESON TRI-GAS, INC.** | : | MAGISTRATE JUDGE |
| c/o Statutory Agent: | : | |
| CT Corporation System | : | **JURY DEMAND ENDORSED HEREON** |
| 4400 Easton Commons Way | : | |
| Ste. 125 | : | |
| Columbus, OH 43219 | : | |
| | : | |
| Defendant. | : | |
| | : | |

## COMPLAINT

NOW COMES Plaintiff Melissa Diehl ("Plaintiff") for her Complaint against Defendant Matheson Tri-Gas, Inc. ("Defendant"), hereby states as follows:

## PARTIES

1. At all relevant times herein, Plaintiff was a resident of Fairfield County, Ohio.

2. Defendant is a foreign corporation registered to do business in the Southern District of Ohio and conducts substantial business in the Southern District of Ohio, including operating a location at 4570 Sutphen Court, Hilliard, Franklin County, Ohio, at which the events in question took place.

1

3. Plaintiff was an "employee" as defined in the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621, *et seq.* ("ADEA"), Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e, *et seq.,* and Chapter 4112 of the Ohio Revised Code,

4. Defendant is an "employer" as defined in the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621, *et seq.* ("ADEA"), Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e, *et seq.,* and Chapter 4112 of the Ohio Revised Code.

## JURISDICTION AND VENUE

5. This action is brought pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621, *et seq.* ("ADEA"), Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e, *et seq.* and the Ohio Laws Against Discrimination, R.C. Chapter 4112 ("Chapter 4112"). This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

6. Venue is proper in this forum pursuant to 28 U.S.C. §1391, because Plaintiff entered into an employment relationship with Defendant in the Southern District of Ohio, Plaintiff performed her job duties there, and Defendant is doing and has done substantial business in the Southern District of Ohio.

7. This Complaint is being timely filed within 90 days of Plaintiff's receipt of Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission.  (See, Notice of Right to Sue, attached hereto as Exhibit A.)

## FACTS

8. Plaintiff was hired by the company now known as Defendant in 1988 when it was owned and operated by Queen Oxygen.

9. Plaintiff was employed by the company for 35 years throughout the ownership changes leading up to Defendant's ownership of the company, which occurred in 1995.

10. Plaintiff was employed as a sales representative for the duration of her employment with the company.

11. Prior to Plaintiff's constructive discharge occurring on July 5, 2023, she had an overwhelmingly positive experience with the company, and she adored her work.

12. She dedicated over three decades of her career to the company, and she is shocked and disappointed by the events leading up to her discharge.

13. At the time of her constructive discharge, Plaintiff was one of only two women to remain employed at the facility in Hilliard, Ohio.

14. Defendant underwent significant management changes in 2022.

15. In July 2022, Scott Gibson became the site manager at Plaintiff's location, and Daniel Maan became Plaintiff's direct supervisor.

16. Plaintiff's second interaction with Mr. Maan occurred during a lunch meeting with all male colleagues.

17. Plaintiff and Mr. Maan were having a private conversation about their lunch order, then out of the blue Mr. Maan stated that he had undergone gastric bypass surgery. Plaintiff was not sure how to process his statement or how to react because she describes herself as being overweight and perceived his comment as an implication that she needed to lose weight.

18. Plaintiff politely responded and said she wished she could lose weight but must take steroids to treat her breast cancer diagnosis and that she is estrogen positive,

necessitating the need to take medication to control the hormone production in her body. The conversation ended after that.

19. Shortly thereafter, in or around August 2022 on, Mr. Maan began micromanaging Plaintiff in an apparent attempt to make her work environment miserable to force her out of the company after 35 years of service.

20. Around February 2023, Plaintiff asked Mr. Maan for a raise because of all the additional duties she took on because the location was significantly understaffed. Plaintiff was covering two territories, house accounts, shipping, receiving, counter sales and customer service, along with many other duties.

21. Mr. Maan asked for Plaintiff to support the inside needs, while keeping that request from his direct supervisor, Mr. Renouf.

22. Mr. Maan informed Plaintiff that he would give her commission on the second territory she was covering.

23. It is Defendant's policy for salespeople to cover other territories as needed, on a short term basis.  However, at that time Plaintiff was covering the location for many months without getting paid and asked for her share of the profits/commission from it.

24. Mr. Maan asked Plaintiff if she received any offers from other distributors. Plaintiff disclosed that she could make more money elsewhere, as she received unsolicited offers from recruiters occasionally. Plaintiff also stated to Mr. Maan that she wanted to finish her tenure out with Matheson and had no intention of leaving, that she just wanted what was fair. Plaintiff also told Mr. Maan that she did have a non-compete on file and asked for support in getting her a raise.

4

25. Mr. Maan offered her $85,000 and asked if she was aware that amount would make her the highest paid sales rep in the region.

26. Plaintiff responded by asking what that had to do with anything. She informed him that her 35-year tenure made her worth it.

27. Later, Mr. Maan stated that his direct supervisor Brian Renouf had denied her the raise because she had received one 10 months prior.

28. Mr. Maan asked her not to be mad at him, but at Mr. Renouf because he made the decision.

29. Mr. Maan stated to Plaintiff that she did not want to leave, that there was "no Matheson without Melissa."

30. Around April 2023, Mr. Maan removed a large Honda account from Plaintiff's territory that she managed for a total of 10-15 years, off and on.

31. Specifically, Mr. Maan removed the Honda account from Plaintiff because Honda was going to increase the volume of "Bedra Wire" they were going to purchase, which would increase the amount of commission that Plaintiff would receive.

32. The Honda account has been managed by an Outside Sales Representative for over forty years. Mr. Maan saw this as a way of increasing profits internally to Matheson by taking the account away from Plaintiff, to further discourage her.

33. Mr. Maan assigned the account to a male inside support person who knew nothing about managing the Honda account. Plaintiff lost a significant portion of commission payments and removing the account from her significantly decreased her wages. There had never been any issues with Plaintiff managing the Honda account.

34. Mr. Maan wrote Plaintiff up on May 10, 2023, for providing "false information about the cost used to calculate the margins on the Bedra wire to Honda."  She was calculating margins based on what she was taught by her predecessor and explained this to Mr. Maan.

35. He used this write-up, Plaintiff's first write-up in 35 years with the company, to attempt to justify removing the Honda account from her territory. She was only doing what she was taught to do.

36. Mr. Maan did not follow the progressive discipline policy set forth in the employee handbook to make an example out of Plaintiff as well as play upon her emotional state. Plaintiff felt that Mr. Maan's tactics were deliberate, and that Mr. Maan was using anything in his power to upset, discourage, harass and make Plaintiff's working environment toxic to the point she finally resigned.

37. Plaintiff felt that she was being targeted, just like Mr. Maan targeted other women on the staff.

38. Plaintiff reached out to Teresa Flanagan in Human Resources and expressed her concerns of being targeted and harassed by Mr. Maan.

39. Teresa Flanagan again expressed Mr. Maan was new and was "on a learning curve." Plaintiff realized it was a lost cause to reach out to HR, as nobody listened to her concerns or took them seriously.

40. Notably, the person assigned to Honda was a younger man out of another location, with no prior experience on the account.

41. Plaintiff ended up having to perform work on the account anyway because there were not enough employees available to handle it internally. Not to mention, the male employee Mr. Maan assigned to it was new and had no idea what they were doing.

42. Thus, Plaintiff assisted with the account as usual, despite being written up for conduct related to it, but was not paid commissions earned on it.

43. Plaintiff was accused of stating that Mr. Maan does not like women.

44. It is apparent that Mr. Maan does not like working with women.  Multiple (4) women have either quit, retired, or resigned within an eight month period because of Mr. Maan's aggressive "management" style, which happens to target women. All of these women stressed that they would still be working for Matheson if it had not been for the unfair, unjust treatment of women and the toxic atmosphere that they experienced when Mr. Maan became Regional Manager for the site.

45. Lorri Foulk, 68, retired at the end of March 2023 after being targeted by Mr. Maan for months leading up to her retirement.

46. Sam Cahill, 56, left her inside sales position in February 2023 because of Mr. Maan's treatment of her.

47. Barb Moore, 71, is an inside sales rep, and upon information and belief, Mr. Maan had her written up twice for the first time in her 40-year tenure with the company for unintentional errors that were out of her control.

48. This conduct, compared to the new hires being all men between the ages of 35 and 58, demonstrates a shocking pattern of discrimination against women over 40 within Defendant.

49. Mr. Maan targeted women that were employed by the company for a long time, to try to get them to quit, retire or resign so he could fill the office with younger male employees.

50. Plaintiff reported Mr. Maan's discriminatory conduct to Teresa Flanagan in Human Resources multiple times, but her concerns were brushed off with the excuse that Mr. Maan was new to Defendant and needed time to adjust.

51. On or about June 9, 2023, Steve McKahan was at a site survey with Plaintiff at Kalkreuth Roofing.

52. He stated to Plaintiff that Ms. Flanagan believed Plaintiff, Ms. Foulk, and Ms. Moore would "altogether have a case against Defendant."

53. He said he was instructed by Ms. Flanagan to back away from any negativity towards the women on staff for fear of a lawsuit.

54. Mr. McKahan's comment was unprovoked by Plaintiff.

55. He repeated the same sentiment in his office during a conversation with Plaintiff and Ms. Moore on June 28, 2023.

56. By July 2023, it became clear that Defendant did not value Ms. Diehl in the same manner she valued the company.

57. Despite her 35 years of service, it held a pay raise over her head by using an old non-compete agreement, removed accounts, and targeted all similarly situated women within the protected class based on age in the same hostile manner.

58. Plaintiff resigned on July 5, 2023, because no reasonable person in her position should be expected to continue employment with a company that undervalued her and belittled her because of her age and gender.

## COUNT I-ADEA
### (Age Discrimination- Hostile Work Environment/Constructive Discharge)

59. Plaintiff realizes herein each of the allegations contained in the preceding paragraphs of her Complaint as if fully restated herein.

60. This claim is brought pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621, *et seq.*, and as amended, for employment discrimination based on age.

61. Plaintiff was born on April 13, 1966, and at all times relevant hereto was over forty (40) years of age and therefore a member of a protected group.

62. At all relevant times, Plaintiff was qualified for her position based on her professional background, which included over thirty-five (35) years of experience with Defendant, numerous accolades received during her employment, multiple awards for achievements such as "Salesperson of the Month" and "Salesperson of the Year," and several quantifiable indicators of high performance and success, among other qualifications.

63. Upon information and belief, Defendant hired individuals significantly younger than Plaintiff to take over her previous accounts as Sales Representatives.

64. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer lost wages and fringe benefits.

65. Defendant willfully discriminated against Plaintiff, in that Defendant knew or showed reckless disregard for the fact that its conduct was prohibited by the ADEA.

66. Defendant discriminated against Plaintiff on the basis of her age by engaging in the following non-exhaustive list of actions: constructing her discharge from Defendant, retaliating against her, creating false reasons for issuing discipline to her, hiring substantially younger individual(s) to fill Plaintiff's position, by treating her less favorably than other younger employees in the terms, privileges, and conditions of employment, in

9

violation of the ADEA, entitling Plaintiff to the remedies contained therein, including but not limited to back pay, front pay, lost benefits, liquidated damages, and attorneys' fees and costs.

### COUNT II-R.C. §4112

### (Age Discrimination- Hostile Work Environment/Constructive Discharge)

67. Plaintiff realizes herein each of the allegations contained in the preceding paragraphs of her Complaint as if fully restated herein.

68. Plaintiff was born on April 13, 1966, and at all times relevant hereto was over forty (40) years of age and therefore a member of a protected group.

69. At all relevant times, Plaintiff was qualified for her position based on her professional background, which included over thirty-five (35) years of experience with Defendant, numerous accolades received during her employment, multiple awards for achievements such as "Salesperson of the Month" and "Salesperson of the Year," and several quantifiable indicators of high performance and success, among other qualifications.

70. Defendant discriminated against Plaintiff on the basis of her age by engaging in the following non-exhaustive list of actions: constructing her discharge from Defendant, retaliating against her, creating false reasons for issuing discipline to her, hiring substantially younger individual(s) to fill Plaintiff's position, by treating her less favorably than other younger employees in the terms, privileges, and conditions of employment, in violation of the ADEA, entitling Plaintiff to the remedies contained therein, including but not limited to back pay, front pay, lost benefits, liquidated damages, and attorneys' fees and costs.

71. Upon information and belief, Defendant hired individuals significantly younger than

Plaintiff to take over her previous accounts as Sales Representatives.

72. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer lost wages and fringe benefits.

73. As a direct and proximate result of Defendant's conduct, Plaintiff suffered emotional distress including shame, humiliation, embarrassment, and mental anguish.

74. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for all legal damages, including back pay, front pay, lost benefits. emotional distress, compensatory damages, attorneys' fees, costs and other relief available under Ohio Revised Code Chapter 4112, including but not limited to punitive damages

## COUNT III-TITLE VII
**(Gender Discrimination- Hostile Work Environment/Constructive Discharge)**

75. Plaintiff realizes herein each of the allegations contained in the preceding paragraphs of her Complaint as if fully restated herein.

76. Defendant engaged in conduct that violates Title VII prohibiting gender discrimination, by harassing Plaintiff, and by creating and encouraging a hostile work environment for Plaintiff.

77. The harassment of Plaintiff by Daniel Mann was unwelcome, which was indicated by Plaintiff.

78. Mr. Mann discussed weight loss with Defendant in front of several other male colleagues, indicating that Plaintiff needed to lose weight.

79. Mr. Maan removed a large account from Plaintiff's territory that she managed for a total of 10-15 years, with no explanation or reason, then gave those benefits from that large account to male new hires that were significantly younger than Plaintiff.

11

80. Multiple women have resigned because of Mr. Maan's aggressive "management" style, which happens to target women.

81. Mr. Maan targeted women that were employed by the company for a long time, to try to get them to resign so he could fill the office with younger male employees.

82. The harassment was based on Plaintiffs' gender.

83. The harassing conduct was sufficiently severe or pervasive to affect the terms, conditions and privileges of employment.

84. Defendant knew or should have known of the harassment yet did not take immediate and corrective action, causing the constructive discharge of Plaintiff.

85. Plaintiff reported Mr. Maan's discriminatory conduct to Teresa Flanagan in Human Resources multiple times, but her concerns were brushed off with the excuse that Mr. Maan was new to Defendant and needed time to adjust.

86. As a result of the hostile environment described herein, Plaintiff was constructively discharged from her employment.

87. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

88. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorneys' fees and costs.

### COUNT IV-R.C. §4112
**(Gender Discrimination- Hostile Work Environment/Constructive Discharge)**

89. All of the preceding paragraphs are re-alleged as if fully rewritten herein.

12

90. Defendant engaged in conduct that violates the Ohio Civil Rights Act prohibiting gender discrimination, by harassing Plaintiff, and by creating and encouraging a hostile work environment for Plaintiff.

91. .Mr. Mann discussed weight loss in front of Defendant and several other male colleagues, indicating that Plaintiff needed to lose weight.

92. Mr. Maan removed a large account from Plaintiff's territory that she managed for a total of 10-15 years, with no explanation or reason, then gave those benefits from that large account to male new hires that were significantly younger than Plaintiff.

93. Multiple women have resigned because of Mr. Maan's aggressive "management" style, which happens to target women.

94. Mr. Maan targeted women that were employed by the company for a long time, to try to get them to resign so he could fill the office with younger male employees.

95. The harassment of Plaintiff by Daniel Mann was unwelcome, which was indicated by Plaintiff.

96. The harassment was based on Plaintiff's gender.

97. The harassing conduct was sufficiently severe or pervasive to affect the terms, conditions and privileges of employment.

98. Defendant knew or should have known of the harassment yet did not take immediate and corrective action, causing the constructive discharge of Plaintiff.

99. As a result of the hostile environment described herein, Plaintiff was constructively discharged from her employment.

100. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to

serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

101. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff demands back pay and benefits, or front pay and benefits, whichever is appropriate, in an amount to be determined at trial, but in any event not less than $75,000.00, compensatory damages, liquidated damages, punitive damages, emotional distress damages, pre-judgment interest, post-judgment interest, costs, attorneys' fees and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

/s/ *Rachel Sabo Friedmann, Esq.*
Rachel Sabo Friedmann (0089226)
**The Friedmann Firm LLC**
3740 Ridge Mill Dr.
Hilliard, OH 43026
Rachel@thefriedmannfirm.com
614-610-9757 (Phone)
614-737-9812 (Fax)
*Trial Counsel for Plaintiff*

14

## JURY DEMAND

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury

/s/ *Rachel Sabo Friedmann, Esq.*

Rachel Sabo Friedmann (0089226)